

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| FRANCES S. BOUKNIGHT, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:19-0456-MGL |
| | § | |
| SOUTH CAROLINA DEPARTMENT OF | § | |
| CORRECTIONS, | § | |
| Defendant. | § | |

## ORDER ADOPTING THE REPORT AND RECOMMENDATION
## AND GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Plaintiff Frances S. Bouknight (Bouknight) filed this lawsuit against her former employer, Defendant South Carolina Department of Corrections (SCDOC), alleging Title VII claims of hostile work environment, constructive discharge, sex discrimination, and retaliation. The Court has federal question jurisdiction over this action in accordance with 28 U.S.C. § 1331.

The matter is before the Court for consideration of the Magistrate Judge's Report and Recommendation (Report) suggesting SCDOC's motion for summary judgment be granted in part and denied in part. Specifically, she recommends the Court grant SCDOC's motion for summary judgment as to Bouknight's claims of hostile work environment, constructive discharge, and sex discrimination, and deny it as to her retaliation cause of action. The Magistrate Judge submits

the Report in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on May 29, 2020, Bouknight and SCDOC filed their objections on June 26, 2020, and they filed their replies to each others' objections on July 10, 2020. The Court has reviewed the objections from both parties, but holds them to be without merit. It will therefore enter judgment accordingly.


## II.    FACTUAL AND PROCEDURAL HISTORY

Bouknight is woman who served as the Adult Education Director for the Palmetto Unified School District (the District) beginning in the fall of 2011. The District operates within the South Carolina Department of Corrections.

Bouknight's supervisor, Randy Reagan (Reagan), was, at all relevant times to this lawsuit, Superintendent of the District. In Bouknight's position as the Adult Education Director, she supervised around fifty percent of the school leaders in the District's correctional facilities. This included hiring, monthly training, in-school observation, annual reviews, and discipline.

Although Bouknight and Reagan's working relationship was initially pleasant, it began to sour in late 2015 to early 2016. The Magistrate Judge provides the following list of events, as Bouknight describes them, that are pertinent to her lawsuit against SCDOC:

| | |
|---|---|
| Late November 2015 | Reagan directs "angry outburst" toward Bouknight in front of other SCDC employees. |
| December 2015 | Angry outburst in front of Principal Paul Martin [(Martin)]. Martin expresses concern to Bouknight about Reagan's behavior. |
| Mid-January 2016 | Reagan treats Bouknight in an "angry manner" and excludes her from work duties. |
| January 29, 2016 | Reagan makes "venomous" comments to Bouknight during weekly staff meeting. |
| March [4-8], 2016 | Reagan confronts Bouknight about coworkers' reports that she had said to others that he was a "poor leader." Bouknight denies making this statement, but is issued [a Memorandum of Understanding] for "insubordination." |
| March 21, 2016 | Reagan removes two employees from Bouknight's supervision. |
| April 4, 2016 | Reagan directs "anger and blame" toward Bouknight at a meeting. Bouknight reports concerns to Human Resources about Reagan's behavior toward her. |
| April 15, 2016 | Meeting with Human Resources: Reagan is informed of Bouknight's complaints about his "bullying." |
| April 27, 2016 | Reagan gives Bouknight a negative performance evaluation. |
| [May 12, 2016. | Reagan learns of Bouknight's purported failure to inform him of her prior relationship with an applicant for a position at the District.] |

| | |
|---|---|
| May 16, 2016 | Reagan reassigns duties away from Bouknight. |
| June 7-9, 2016 | Bouknight complains of retaliation to Reagan's supervisor and Human Resources. Reagan takes away staff assistant to Bouknight. . . . |
| July 19-26, 2016 | Reagan changes Bouknight's position description to remove supervisory duties. |
| August 1-18, 2016 | Bouknight complains to Reagan's supervisor and legal counsel and has several meetings with them. |
| August 19, 2016 | Reagan removes all supervisory duties from Bouknight. |
| August 22, 2016 | Bouknight files Sexual Harassment/Hostile Work Environment Complaint with [SCDOC]. |
| September 15, 2016 | Reagan receives a written warning after investigation of Bouknight's complaint. |
| Early 2017 | Reagan summons Bouknight to a meeting with Martin and berates Bouknight. |
| March 28, 2017 | Reagan "acts out in anger" toward Bouknight. Bouknight reports the outburst in an Incident Report to Human Resources on May 23, 2017. |
| April 25-26, 2017 | Reagan "ridicules and screams at Bouknight" in front of staff. |
| April 26, 2107 | Bouknight complains to Reagan's supervisor. |
| May 23, 2017 | Bouknight reports the March and April 2017 outbursts in an Incident Report to Human Resources. |
| May 31, 2017 | Bouknight is demoted [and reassigned from being the Adult Education Director for the |

|  | District to being a teacher at the District's Manning High School.] |
| June 8, 2017 | Bouknight grieves her demotion. Grievance is denied [on] June 19, 2017. |
| June 6, 2017 | Bouknight begins medical leave. |
| July 13, 2017 | Bouknight files an EEOC Charge. |
| August 11, 2017 | Bouknight resigns. |

Report at 2-3 (punctuation modified).

Bouknight subsequently filed suit against SCDOC in the Richland County Court of Common Pleas. SCDOC removed the case to this Court; and thereafter filed a motion for summary judgment as to all of Bouknight's claims, Bouknight filed a response in opposition, and SCDOC filed a reply.

As the Court noted above, after the Magistrate Judge considered the motion, she suggested the Court grant SCDOC's motion for summary judgment as to Bouknight's claims of hostile work environment, constructive discharge, and sex discrimination, and deny it as to her retaliation cause of action.

## III.    DISCUSSION AND ANALYSIS

In considering Bouknight's Title VII claims, because hers is a circumstantial case, the Court must employ the familiar burden-shifting scheme set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, an employee must first establish a prima facie case of her Title VII claims. *Id.* at 802.

Only if the employee successfully demonstrates a prima facie case does the burden shift to the employer to articulate some legitimate, non-retaliatory reason for the adverse employment action. *Id.* If the employer does so, the burden shifts back to the employee to show that the articulated reason was actually a pretext for discrimination. *Id.* at 804.

5

### A.    *Bouknight's Objections*

Bouknight lodges fourteen objections to the Magistrate Judge's recommendation the Court grant SCDOC's motion for summary judgment as to her hostile work environment, constructive discharge, and sex discrimination causes of action.

First, she refutes the Magistrate Judge's advice to the Court that she failed to meet the severe and pervasive standard necessary for her hostile work environment and constructive discharge claims. The focus of this objection is on her belief that the Magistrate Judge erred by determining "a reasonable jury could not find that [her] work environment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment based on her sex and her protected activities." Objections at 3.

The Court will first address this objection as it relates to Bouknight's hostile work environment claim. To establish a prima facie Title VII hostile work environment cause of action, the plaintiff must show: "(1) unwelcome conduct; (2) that is based on the plaintiff's [being a woman]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City Of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (citation omitted) (internal quotation marks omitted) (alteration marks omitted).

The "severe or pervasive" element of a hostile work environment claim "has both subjective and objective components." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir.2003) (en banc). "First, the plaintiff must show that [she] subjectively perceived the environment to be abusive." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (citation omitted) (internal quotation marks omitted) (alteration marks omitted). There is no dispute Bouknight "subjectively perceived the environment to be abusive." *Id*. Thus, the Court turns to the objective element of the test.

6

"[W]hen determining whether the harassing conduct was objectively severe or pervasive, [the Court] must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks omitted). "[P]laintiffs must clear a high bar . . . to satisfy the [objective] severe or pervasive test." *Id.*

"[C]onstruing all facts and reasonable inferences therefrom in favor of" Bouknight, *Gen'l Ins. Co. of America v. United States Fire Insurance Company*, 886 F.3d 346, 353 (4th Cir. 2018), the Court concludes she has demonstrated Reagan was sometimes angry, confrontational, retaliatory, rude, immature, insensitive, insulting, venomous, ridiculing, berating, callous, and difficult to work with.

Nevertheless, the Court also determines Reagan's alleged misconduct toward Bouknight did not start until they had worked together for four years; and, once it commenced, there are eight or so alleged angry outbursts that occurred over an eighteen-month period.

Additionally, as the Magistrate Judge noted, Reagan "apparently was never physically threatening. . . . [And,] even crediting Bouknight's characterization of Dr. Reagan's treatment as abusive, the record compels the conclusion that he treated everyone he worked with in a similar manner[.]" Report at 10-11.

Therefore, the Court concludes Bouknight has failed to "clear [the] high bar," *Sunbelt Rentals, Inc.*, 521 F.3d at 315, necessary to show Reagan's conduct was sufficiently severe and pervasive, as it relates to her hostile work environment claim. And, the portion of this objection concerning her constructive discharge claim fares no better.

"The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that [her] working conditions become so

intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green v. Brennan*, 136 S.Ct. 1769, 1776 (2016) (citation omitted) (internal quotation marks omitted). "When the employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge." *Id*. 1776-77. Thus, one making a "constructive discharge claim entails something more" than one claiming a hostile work environment. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004).

Inasmuch as Bouknight is unable to demonstrate Reagan's conduct was sufficiently severe and pervasive to establish her hostile work environment cause of action, it follows she is unable to show "something more" than that, *id*., which is what a constructive discharge claim requires. Accordingly, the Court will overrule this objection as to both Bouknight's hostile work environment and constructive discharge claims.

In Bouknight's second objection, she contends the Magistrate Judge erred in failing to conclude the totality of the circumstances presents a triable issue as to the severity and pervasiveness of Dr. Reagan's conduct.

"Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Sunbelt Rentals, Inc*., 521 F.3d at 315. "Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than . . . callous behavior by one's superiors, a routine difference of opinion and personality conflict with one's supervisor, are not actionable under Title VII." *Id*. at 315-16 (citations omitted) (internal quotation marks omitted) (alteration marks omitted).

"The task then on summary judgment is to identify situations that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion." *Id*. But here, even when the Court assumes Bouknight's allegations of Reagan's misconduct are true, and considers them in their totality, she still misses the mark. In other words, the Court is unpersuaded Bouknight has established her work environment was such "that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion." *Id*. As such, the Court will also overrule this objection.

Third, according to Bouknight, the Magistrate Judge is mistaken in her failure to agree the frequency of Dr. Reagan's conduct failed to meet the requisite standard.

As the Court has already noted, there are around eight alleged angry outbursts from Reagan that occurred over an eighteen-month period, from late November 2015 to April 25-26, 2017. The Court is unable to say that "a reasonable jury might find [this] to be so out of the ordinary as to meet the . . . pervasive criterion." *Id*. Thus, the Court will overrule this objection, too.

In Bouknight's fourth objection, she argues the Magistrate Judge erred when she failed to conclude the severity of Dr. Reagan's conduct satisfies the requisite standard.

Given the Court's discussion above, the Court will overrule this objection, as well.

Fifth, Bouknight maintains the Magistrate Judge erred in making a factual finding about one of Reagan's alleged angry outbursts directed at Bouknight and witnessed by Martin. Bouknight contends the Magistrate Judge "erred in concluding that the event witnessed by Dr. Martin is evidence that Dr. Reagan did not cross the line from an unharmonious workplace to subjecting [her] to an unlawful hostile work environment." Bouknight's Objections at 8.

In Martin's affidavit, he attested to the following:

> I personally observed that Dr. Reagan was verbally abusive to [Bouknight]. As an example, one occasion I witnessed that sticks out in my memory is when I had been to Dr. Reagan's office around the beginning of 2017. I had come from Turbeville and I was letting Dr. Reagan know of what was happening at the school and what support I needed to keep improving the school. Dr. Jay Collins and Mr. John Shipman were also present during that meeting. Dr. Reagan got mad and said it was all Ms. Bouknight's fault, which was not true. Mr. Shipman was over the issues I was identifying at Turbeville. And I confirmed that fact to Dr. Reagan. But he responded, "Ms. Bouknight knew what was going down there. This was her fault. Let me get her up here." So, Dr. Reagan called downstairs for Ms. Bouknight to come upstairs. While we were waiting for Ms. Bouknight to come to the office Dr. Reagan told me, "Mr. Martin I want to let you know something. They cannot call it hostile work environment if you don't use profanity, you don't put your hands on them, and you don't threaten them." I was shocked. I have seen that Dr. Reagan tries to surround himself with folks that are scared to death of him. If you stand up to him, he becomes verbally abusive in an attack mode. When Ms. Bouknight came in, I stepped out into the hallway. The door to Dr. Reagan's office remained cracked open so I could clearly hear how Dr. Reagan was so loud and abusive to Ms. Bouknight. After tearing into Ms. Bouknight, Dr. Reagan finally said, "now you can go." As she left the office, I saw that Ms. Bouknight had tears in her eyes and was red in the face. I was on the steps in front of Ms. Bouknight.

Martin's Aff. ¶ 27.

Although "the question of whether harassment was sufficiently severe or pervasive is quintessentially a question of fact," *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 773 (4th Cir. 1997) (citation omitted) (internal quotation marks omitted), even after assuming the truth of Bouknight's evidence, and viewing all inferences from that evidence in the light most favorable to her, including this affidavit from Martin, the Court states again that it is unable to say Bouknight has "clear[ed] [the] high bar . . . [she must clear] to satisfy the [objective] severe or pervasive test."

10

*Sunbelt Rentals, Inc.,* 521 F.3d 306, 315. As the Magistrate Judge explained, such evidence is simply not in the record. Thus, the Court will also overrule this objection.

Sixth, Bouknight states the Magistrate Judge should have concluded Dr. Reagan's physically threatening conduct met the requisite standard. According to Bouknight, "Reagan's volatility and physical signs of anger toward [Bouknight], connected with her knowledge that Dr. Reagan likely kept a gun in the office, made [her] fearful for her physical safety in the workplace." Bouknight's Objections at 11.

Bouknight's reference to "physical signs of anger" appear to refer to her allegations of his alleged volatility, angry demeanor, arm waiving, and table slamming and pounding. But, there are no allegations Reagan ever inappropriately touched Bouknight or threatened to do so. Nor is there any evidence he had ever done so to anyone else. *See Hartsell*, 123 F.3d at 773 (affirming the granting of summary judgment on the plaintiff's hostile work environment claim while noting "there is no allegation that [the plaintiff] was inappropriately touched[.]"). Consequently, even when viewing the facts of this case in the light most favorable to Bouknight, based on this evidence, the Court is unable to conclude Reagan was physically threatening.

As to Bouknight's suggestion "Reagan likely kept a gun in this office," *id.*, this appears to be based upon the deposition testimony of Tina Bridgewater, one of Bouknight's co-workers, wherein she testified to the following:

> I will tell you there was a common knowledge among people that we all believed he had–well, we knew he had one in his truck. He had talked about it. But that's not illegal. That's, you know, you can do that. There was question did he have one in the office, did he have one in the safe. I mean there's always sort of the whispering scuttlebutt.

Bridgewater's Depo. at 19:10-17.

Of course, such "whispering scuttlebutt," as Bridgewater called it, is not competent evidence on which the Court can rely for purposes of this motion. Hence, for these reasons, the Court will overrule this objection, too.

Seventh, Bouknight insists the Magistrate Judge erred in her assessment that Dr. Reagan's humiliation of her failed to meet the requisite standard.

As the Court noted above, "[w]hen determining whether the harassing conduct was objectively severe or pervasive, [the Court] must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (internal quotation marks omitted). Thus, the Court considers the humiliation Bouknight allegedly suffered alongside other factors.

"This is not, and by its nature cannot be, a mathematically precise test." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993). "No single factor is dispositive, as the real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed[.]" *Sunbelt Rentals, Inc.*, 521 F.3d at 315 (citations omitted) (internal quotation marks omitted) (internal alteration marks omitted).

According to Bouknight, "Reagan sought to . . . humiliate her at staff meetings, yell at her publicly, degrade her publicly, act in such an intimidating manner that he made her cry on several occasions, and ruined her professional career by demoting her from an administrative position to a teacher position for no legitimate reason. This is the epitome of humiliation[.]" Bouknight's Objections at 15.

As the Court has already stated, however, "incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Sunbelt Rentals, Inc.*, 521 F.3d at 315. "[R]ude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII." *Id.* at 315–16 (internal quotation marks and citations omitted).

Those terms almost perfectly sum up Reagan's alleged misconduct. As such, Bouknight's humiliation complaint is insufficient to turn this into a legally valid Title VII claim. Consequently, the Court will overrule this objection, as well.

Eighth, according to Bouknight, the Magistrate Judge was mistaken in stating Dr. Reagan's treatment of Bouknight was merely rude and harsh.

The Court will overrule this objection on a similar basis as to why it overruled her seventh objection: Reagan's purported mistreatment of Bouknight does not amount to a Title VII claim.

Ninth, Bouknight urges the Court to reject the Magistrate Judge's suggestion Dr. Reagan's treatment of her was insufficient to unreasonably interfere with her work performance.

But, as the Magistrate Judge correctly stated, after Reagan's alleged misconduct commenced, "Bouknight continued to do her job well for nearly a year and a half. Accordingly, regardless of how unpleasant Dr. Reagan made the work environment, it does not appear to have unreasonably interfered with Bouknight's work performance." Report at 11.

Bouknight has failed to offer anything in her objections to demonstrate otherwise. Therefore, the Court will also overrule this objection.

Tenth, Bouknight claims the Magistrate Judge erred by not focusing on her medical status as support for a triable issue of hostile work environment and constructive discharge. Bouknight contends that "[t]he harm to [her] health was so severe that [her] physician would not allow her to

return to work in that environment . . . . [Her] medical records speak to the severe and pervasive nature of the work environment causing her constructive discharge." Bouknight's Objections at 17.

Assuming these records are admissable, they do nothing to advance Bouknight's claim. Her physician's opinion as "to the severe and pervasive nature of [her] work environment[,]" *id.*, is of no consequence here. Whether Reagan's purported misdeeds amount to severe and pervasive is a question of law and, as such, a determination her physician is unequipped and unauthorized to make. Thus, the Court will overrule this objection, too.

Eleventh, Bouknight complains the Magistrate Judge committed error in advising the Court Dr. Reagan's conduct was not premised on Bouknight's protected status as a woman. But, she fails to develop this objection.

Instead, the gist of her argument is that she "objects to the [Magistrate Judge] finding that [her] assertions about Dr. Reagan's treatment of her do not rise to the severe and pervasive standard required for her hostile work environment and constructive discharge claims." Bouknight's Objections at 17.

The Court has already considered and rejected this contention above. It need not repeat the discussion here. Suffice it to say the Court will overrule this objection, as well.

In Bouknight's twelfth objection, she asserts the Magistrate Judge should have advised the Court she has a triable issue of constructive discharge.

But, as the Court concluded above, inasmuch as Bouknight has been unable to establish her hostile work environment claim, her constructive discharge claim fails, too. *See Suders*, 542 U.S. at 147 (one making a "constructive discharge claim entails something more" than one claiming a hostile work environment). As such, the Court will also overrule this objection

Thirteenth, Bouknight stresses to the Court she has not abandoned any of her claims asserted in her Complaint. Here, Bouknight "asserts that [the hostile work environment, constructive discharge and demotion] occurred because of her sex[.]" Bouknight's Objections at 19.

But, the Court has already determined her claims of a hostile work environment and constructive discharge are without merit. Thus, only her sex discrimination claim regarding her demotion remains.

Bouknight offers some evidence Reagan treated her differently than he did the men he supervised. For instance, one of her co-workers stated: "Reagan's treatment of women is concerning." Ortmann Aff. ¶ 24. But, Bouknight points to no evidence in the record showing that Reagan demoted her because she was a woman.

In fact, Reagan was the one who interviewed and hired Bouknight. Reagan Aff. ¶ 6. And, "[w]hen the hirer and firer are the same individual, there is a powerful inference relating to the 'ultimate question' that discrimination did not motivate the employer, and the early resolution of this question need not be derailed by strict fealty to proof schemes." *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991). On these bases, the Court will overrule this objection, too.

Fourteenth, Bouknight objects to the Magistrate Judge's recommendation she is unable to establish the necessary based-on-sex element necessary for her sex discrimination claim for the three adverse employment actions: hostile work environment, demotion, and constructive discharge.

Bouknight's discussion in this objection is limited to her hostile work environment and constructive discharge claims. In light of the Court's conclusions above that she is unable to survive summary judgment on these two claims for other reasons, it need not consider this objection. Consequently, the Court will overrule this objection, as well.

B.     **SCDOC's Objections**

SCDOC offers five objections to the Magistrate Judge's recommendation the Court deny its motion for summary judgment as to Bouknight's retaliation cause of action.

First, SCDOC claims the Magistrate Judge was mistaken in suggesting Bouknight established that she engaged in protected activity. According to SCDOC, the Magistrate Judge "erred in identifying the August 22, 2016[,] Hostile Work Environment complaint as a 'Sexual Harassment/Hostile Work Environment Complaint.' [Bouknight] chose not to check the box corresponding to 'Sexual Harassment' at the top of the standard complaint form." SCDOC's Objections at 8 (citations omitted) (emphasis omitted). SCDOC further contends that, "[b]ecause [Bouknight] did not complain to SCDC about being treated differently on account of her sex, the Report erred in finding [she] engaged in protected activity." *Id*. at 9 (footnote omitted).

To establish a prima facie case of Title VII retaliation, the employee must show: "(1) that [she] engaged in protected activity, (2) that the employer took a materially adverse action against [her,] and (3) there is a causal connection between the protected activity and the adverse action." *Perkins v. Int'l Paper Co*., 936 F.3d 196, 213 (4th Cir. 2019).

"Employees engage in protected . . . activity when . . . they complain to their superiors about suspected violations of Title VII." *Boyer-Liberto v. Fontainebleau Corp*., 786 F.3d 264, 281 (4th Cir. 2015) (citation omitted) (internal quotation marks omitted). "Complaining employees are protected by Title VII once they have an objectively reasonable belief that a Title VII violation has occurred." *Jordan v. Alternative Resources Corp*., 467 F.3d 378, 380 (4th Cir. 2006) (emphasis omitted).

As the Court determined above, Bouknight has failed to establish a substantive violation of Title VII. Thus, it follows that she never complained about an actual Title VII violation inasmuch as there was not one. And here, as SCDOC noted, instead of checking the box corresponding to

"Sexual Harassment" on the complaint form, Bouknight checked the "Hostile Work Environment" box.

But, "the term[ ] [hostile environment] should be understood, in certain contexts, to encompass sexual harassment[.]" *Id*. *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 336 (4th Cir. 2018). Both require Bouknight show she was being treated differently on account of her being a woman. *See Spicer v. Commonwealth of Va. Dep't of Corrections*, 66 F.3d 705, 709–10 (4th Cir.1995) (en banc) (holding that a sexual harassment claim based on a hostile work environment requires the plaintiff to prove unwelcome conduct that was based on the plaintiff's sex).

In the context the Court describes herein, when all the legal jargon is cast aside, it is by no means a stretch to conclude Bouknight's hostile work environment claim includes a claim for sexual harassment. Accordingly, whether she checked the "Sexual Harassment" box or the "Hostile Work Environment" box is of no moment.

Furthermore, the Court easily concludes that Bouknight, a layperson untrained in the law, had "an objectively reasonable belief that a Title VII violation [had] occurred." *Id*. In other words, she could have reasonably thought Reagan treated her poorly because she was a woman. In fact, in Bouknight's personal contemporaneous notes, she writes: "on a number of occasions, Dr. Reagan has agreed with a male staff member regarding an issue, concern or recommendation, but the same recommendation made by a female (me) a few weeks before had been immediately denied." Bouknight's Notes at 3.

Thus, because the Court concludes Bouknight engaged in protected activity when she complained to her superiors about what she could have reasonably thought to be Reagan's violations of Title VII, it holds she satisfies the "engaged in protected activity" element of her retaliation claim. *See Boyer-Liberto*, 786 F.3d at 281. As such, the Court will overrule this objection.

In SCDOC's second objection, it proposes the Magistrate Judge erred in concluding Bouknight established an adverse employment action.  In support of its argument, SCDOC cites to Fourth Circuit race discrimination caselaw stating that "[a]n adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004).  According to SCDOC, "[b]ecause [Bouknight] worked for the state prison system, and working in a prison was a condition of her employment, [her] reassignment to Manning [High School] with the same pay and benefits should not be deemed an adverse employment action."  SCDOC's Motion for Summary Judgment at 28.

But, "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).  The "standard for establishing an adverse employment action under Title VII's antiretaliation provision is more expansive than the standard for demonstrating a tangible employment action under the statute's antidiscrimination provisions." *Ray v. International Paper Company*, 909 F.3d 661, 670 (4th Cir. 2018).  The Supreme Court has defined an adverse employment action, as it relates to a retaliation claim, this way: something that "well might have dissuaded a reasonable worker from engaging in protected conduct." *Burlington*, 548 U.S. at 68 (internal citation omitted) (internal quotation marks omitted).

Accordingly, the issue in Bouknight's retaliation claim is not whether her demotion from Adult Education Director for the District to being a teacher at Manning High School amounts to an adverse employment action because the terms, conditions, or benefits of her employment were adversely affected.  Instead, the question is whether the demotion to Manning High School "well might have dissuaded a reasonable worker from engaging in protected conduct."  *Id.* (internal

citation omitted) (internal quotation marks omitted).  Inasmuch as SCDOC fails to address this question, the Court will also overrule this objection.

In SCDOC's third objection, it complains the Magistrate Judge was wrong in recommending Bouknight established a causal connection between any alleged protected activity and her May 31, 2017, demotion: reassignment to Manning High School.

To establish the necessary causation for a retaliation claim, "the employer must have taken the adverse employment action because the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original).  "[E]stablishing a causal relationship at the prima facie stage is not an onerous burden."  *Strothers*, 895 F.3d at 335 (citation omitted) (internal quotation marks omitted).

Here, the Court asks whether Bouknight has demonstrated that her engaging in protected activity caused her demotion.  In the "Factual and Procedural History" section of this opinion, the Court laid out a timeline of Bouknight's evidence concerning her relationship with Reagan.  The Court need not reproduce the list here.

Suffice it to say, this is not a close call.  A jury, after considering all of the evidence, may well find Reagan demoted Bouknight  because of her protected activity of complaining about him.  Therefore, the Court will overrule this objection, too.

SCDOC's fourth objection is that the Magistrate Judge erred in advising the Court that Bouknight is able to rebut SCDC's legitimate, non-retaliatory reason for her May 31, 2017, demotion.  SCDOC states that "[t]he undisputed evidence presented in Dr. Reagan's affidavit is that he and Ms. Barrett [(Reagan's supervisor)] assigned [Bouknight] to Manning [High School] at the end of the 2016–2017 academic year because her certifications and experience made her uniquely qualified to address the challenges at Manning High School, and Dr. Reagan had lost trust in her to continue serving as a member of his leadership team."  SCDOC's Objections at 16.

According to SCDOC, Reagan lost trust in Bouknight for two reasons.  The first concerns her alleged insubordination, for which he issued a write up on March 8, 2016.  And, the second is about her purported failure to inform him of her prior relationship with an applicant for a position at the District, which Reagan found out about on May 12, 2016.

As the Magistrate Judge observed, Reagan "did not immediately demote [Bouknight]; the reassignment did not occur until over a year after he first became aware of her alleged insubordination and breach of trust."  Report at 17.  Nevertheless, SCDOC argues that "[t]he undisputed evidence from Dr. Reagan's affidavit is that Ms. Barrett and Dr. Reagan waited to the end of the academic year to reassign [Bouknight].  [She] fails to offer any evidence to dispute Dr. Reagan's affidavit stating he and Ms. Barrett chose to reassign her at the end of the academic year."  SCDOC's Objections at 19.

"[T]he academic year end[s] in May."  *Id*. at 3.  "Therefore," according to SCDOC, "decisions regarding schools within the [District] are often made in the May/June time period."  *Id*.

To recap, Reagan says he lost trust in Bouknight because of events that allegedly occurred in March and May of 2016.  That was during the 2015-16 school year.  But, Reagan demoted Bouknight on May 31, 2017.  In other words, instead of demoting Bouknight at the end of the 2015-16 academic year, when Reagan says he lost trust in Bouknight, he waited until the end of the next academic year, 2016-17, to do so.

Thus, the Magistrate Judge is correct: "[a] jury should decide whether it was because [Reagan] had lost confidence in [Bouknight's] loyalty to him based on her actions a year earlier, or whether it was because she repeatedly complained to his supervisor and Human Resources about his hostile treatment toward her."  Report at 17.  As such, the Court will overrule this objection, as well.

In SCDOC's fifth and final objection, it declares the Magistrate Judge wrongly recommended Bouknight established but-for causation.  As per SCDOC, "[e]ven if [Bouknight] had offered evidence to rebut the legitimate, non-retaliatory reasons Ms. Barrett and Dr. Reagan reassigned her to Manning High School, she fails to establish but-for her August 22, 2016[,] Hostile Work Environment complaint, her April 15, 2016[,] complaint, or any other purported protected activity, SCDC would not have reassigned her to Manning High School on May 31, 2017."  SCDOC's Objections at 19.

"[T]he plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (citation omitted) (internal quotation marks omitted).  "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."  *Id.* at 134.

In addition, "although the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual."  *Id.*  (citation omitted) (internal quotation marks omitted) (internal alteration marks omitted).

Given the reams of evidence of Reagan's alleged misconduct after Bouknight complained of it, and the question as to whether the reason SCDOC gives for demoting Bouknight is worthy of credence, there remains a genuine issue of material fact as to whether, but-for Bouknight's protected activity, SCDC would have demoted her.  Thus, the Court will leave it to a jury to decide this issue.  Consequently, the Court will also overrule this  objection.

*****

As the Magistrate Judge aptly put it, "[a]lthough the evidence [Bouknight] presents could fairly support the conclusion that Dr. Reagan bullied his co-workers, case law has long held that rudeness, bullying, and harsh management styles generally do not meet the requisite standard to establish a [Title VII claim]." Report at 9. But still, the Court would be remiss if it failed to briefly comment on the profoundly disturbing and troubling allegations and evidence in this case.

Some might be surprised, find it puzzling, or be perplexed, that the Court is granting summary judgment on most of Bouknight's claims. Suffice it to say, the Court applies the law as it is, not as one might think it ought to be.

The Court hastens to add, however, that its decision granting summary judgment on those claims absolves neither Reagan nor SCDOC of responsibility for Reagan's alleged misdeeds, if he, in fact, committed them. Summary judgment is not exoneration. And, just because something does not amount to a colorable claim does not make it acceptable.

Legalities aside, there are mountains of stunning and alarming allegations and evidence in this record which, if true, might bring into question the wisdom of SCDOC having had Reagan in its employ, much less as a supervisor. He has since retired. Reagan's Aff. ¶ 5. But, that is a question for another day and for another venue. *See DeJarnette v. Corning Inc*., 133 F.3d 293, 298-99 (4th Cir. 1998) ("Title VII is not a vehicle for substituting the judgment of a [C]ourt for that of the employer.") (citation omitted) (internal quotation marks omitted).

## IV.    CONCLUSION

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules both sets of objections, adopts the Report, and incorporates it herein. Accordingly, it is the judgment of this Court SCDOC's motion for summary judgment is

**GRANTED IN PART AND DENIED IN PART**.  Specifically, the motion is **GRANTED** as to

Bouknight's  hostile work environment, constructive discharge, and sex discrimination claims, and

**DENIED** as to her retaliation claim.

      **IT IS SO ORDERED**.

      Signed this 16th day of September, 2020, in Columbia, South Carolina.


                 /s/ Mary Geiger Lewis
                 MARY GEIGER LEWIS
                 UNITED STATES DISTRICT JUDGE